**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

|  |  |  |
|---|---|---|
| IN RE HIGH FRUCTOSE CORN SYRUP ANTITRUST LITIGATION | : : : : | MDL No. 1087 & Master File No. 95-1477 |
| THE DOCUMENT RELATES TO: ALL ACTIONS | : : : | Hon. Michael M. Mihm |

TO:    DIRECT PURCHASERS OF HIGH FRUCTOSE CORN SYRUP

**If you bought high fructose corn syrup in the United States during the period July 21, 1991, through June 30, 1995, directly from one or more of the five defendant companies mentioned below.**

**PLEASE READ THIS NOTICE**

**THIS IS A NOTICE OF SETTLEMENT WITH A.E. STALEY
MANUFACTURING COMPANY AND OF A PROPOSED PLAN OF
DISTRIBUTION AND JOINT PETITION FOR AWARD OF ATTORNEYS' FEES**

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

- The five defendants initially named in this litigation were Archer Daniels Midland Company ("ADM"), A.E. Staley Manufacturing Company ("Staley"), Cargill, Incorporated ("Cargill"), CPC International, Inc. ("CPC"), and American Maize-Products Company ("Maize").  The allegations are that the defendants conspired to fix prices and allocate volumes of high fructose corn syrup in the United States in violation of Sherman Act § 1.

- You were previously notified in July 1996 of the existence of this class action, the nature of the Class∗ claims, and a partial settlement with defendant CPC for $7,000,000.  You were then given the opportunity to exclude yourself from the class certified by the Court on May 9, 1996.  If you previously excluded yourself from the Class, you are not a member of the Class.

- You were previously notified in March 2004 of a partial settlement of $24,000,000 with two additional defendants, Maize and Cargill.

- You were also previously notified in July 2004 of a partial settlement of $400,000,000 with defendant ADM.

- A settlement has now been reached with defendant Staley. The settlement, if approved by the Court, will provide $100,000,000 to pay claims of direct purchasers of high fructose corn syrup in the United States during the period July 21, 1991, through June 30, 1995. This brings the total settlements in this class action to $531,000,000 plus interest earned.

- The ADM and Staley settlements, if approved, will terminate this litigation.

- Your legal rights are affected whether you act or don*t act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS PARTIAL SETTLEMENT: | |
|---|---|
| **COMMENT OR OBJECT** | Write to the Court about the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | If you previously did not exclude yourself from the Class, you are a member of the Class and need do nothing at this time. A claim form will be disseminated which you will need to complete and return to receive your share of the settlement proceeds. If you do not receive a claim form by September 30, 2004, please write to: *In re: High Fructose Corn Syrup Antitrust Litigation,* P.O. Box 910, Philadelphia, PA 19105-0910. As stated in the previous notices, you should maintain all of your records of purchases of high fructose corn syrup from any of the defendants for the period July 21, 1991, through June 30, 1995. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement.

### SUMMARY OF SETTLEMENT

Current Status of the Litigation

This litigation was commenced in 1995. On May 9, 1996, the Court certified the case to proceed as a class action. In July 1996, via mail and publication the Court notified the Class of the certification of the Class and the nature of the Class* claims, afforded eligible persons the opportunity to exclude themselves from the Class, and reported that a partial settlement had been reached with defendant CPC for approximately $7,000,000.

Between 1996 and 2001, the plaintiffs and the remaining defendants engaged in extensive discovery including more than 150 depositions of the defendants' relevant executives and employees (both current and former), the class plaintiffs' representatives, absent class members' representatives, and other relevant third parties. In addition, both the plaintiffs and defendants engaged in extensive document discovery and hundreds of thousands of pages of documents were produced. The plaintiffs and defendants also utilized the services of expert witnesses to analyze the high fructose corn syrup market, and these experts produced reports and gave depositions.

In April 2001, defendants moved for summary judgment seeking dismissal of class plaintiffs' claims. On August 23, 2001, the Court granted the motion for summary judgment dismissing plaintiffs' claims. Class plaintiffs appealed to the United States Court of Appeals for the Seventh Circuit ("Seventh Circuit"). The Seventh Circuit reversed the grant of summary judgment in June 2002, reinstated plaintiffs' claims, and returned the case to this court for trial.

After the Seventh Circuit decision, the parties continued their preparations for trial. At the Seventh Circuit's suggestion, the court appointed an economic expert to evaluate the parties' experts' analyses. The court-appointed expert filed a report on January 6, 2004, and was deposed on February 17 and 18, 2004. Among other things, the parties filed more than 50 so-called *in limine* motions seeking to preclude certain evidence at trial. During the week of November 17, 2003, and on January 26, 2004, the Court held hearings on these motions. The Court found that a large amount of evidence that class plaintiffs planned to use at trial was admissible against ADM but not against Maize, Cargill, or Staley. The Court also denied Staley's, Cargill's and Maize's motion to hold a separate trial from ADM. The district court certified these decisions for immediate appeal to the Seventh Circuit. On March 18, 2004, the Seventh Circuit ruled that the district court was not forbidden from ordering a trial with separate juries.

Before the Seventh Circuit reached that decision, a settlement was reached with defendants Maize and Cargill for $24,000,000, which has been paid into escrow and is earning interest.

A settlement was then reached with defendant ADM for $400,000,000, which has been paid into escrow accounts and is earning interest. A hearing for final approval of the ADM settlement is scheduled for September 3, 2004.

Subsequent to the ADM settlement, the Court held a series of hearings during which it ruled on objections to deposition designations and exhibits that plaintiffs and defendant Staley respectively indicated they would offer at a trial scheduled to begin on September 7, 2004. On July 13, 2004, the Court held a final pretrial conference and entered a Final Pretrial Order.

On July 27, 2004, a proposed settlement was reached with defendant Staley for $100,000,000, which has been paid into escrow accounts and is earning interest. If the settlements with ADM and Staley are approved by the Court, that will terminate this class action litigation. The total funds from the settlements will be $531,000,000 plus interest earned since the settlements have been paid, less approximately $5,120,000 disbursed as litigation expenses pursuant to Court order.

Further Information

Further information regarding the Action and this Notice may be obtained by contacting Plaintiffs' Co-Lead Counsel:

| | | |
|---|---|---|
| Robert N. Kaplan | H. Laddie Montague, Jr. | Michael J. Freed |
| Gregory K. Arenson | Charles P. Goodwin | Barat S. McClain |
| Kaplan Fox & Kilsheimer LLP | Berger & Montague, P.C. | Much Shelist Freed Denenberg |
| 805 Third Avenue, 22nd Floor | 1622 Locust Street | Ament & Rubinstein, P.C. |
| New York, NY 10022 | Philadelphia, PA 19103 | 191 N. Wacker Drive |
| (212) 687-1980 | (215) 875-3000 | Suite 1800 |
| | | Chicago, IL 60606-1615 |
| | | (312) 521-2000 |

Please do not call any representative of the defendants or the Court.

Reasons for the Settlement

Plaintiffs' counsel believe that the proposed settlement with Staley is a good recovery and is in the best interests of the Class. Because of the risks associated with continuing to litigate and proceeding to trial with Staley, there was a danger that plaintiffs would not have prevailed on any of their claims, in which case the Class would receive no further recovery.

Therefore, the plaintiffs agreed to the settlement of $100,000,000 with Staley to help to ensure a fair and reasonable resolution to this matter and to provide further monetary benefits to the members of the Class recognizing the existence of complex, contested issues of law and fact; the risks inherent in such complex litigation; the likelihood that in the absence of settlement future proceedings could take additional years and be extremely costly; and the magnitude of the benefits resulting from the settlement.

## BASIC INFORMATION

1. Why did I get this notice package?

You or your company may have directly purchased from one or more of the defendants high fructose corn syrup in the United States during the period July 21, 1991, through June 30, 1995.

The Court directed that this Notice be sent to you because you have a right to know about a proposed settlement of a class action lawsuit and that the Court will hold a hearing to determine whether to approve it.

This package explains the lawsuit, the settlement, your legal rights, and what benefits are available.

The Court in charge of this case is the United States District Court for the Central District of Illinois, and the case is known as *In re High Fructose Corn Syrup Antitrust Litigation,* Master File No. 95-1477.  It has been pending since 1995.  The people who sued are called plaintiffs, and the companies and the persons they sued, ADM, Staley, Cargill, CPC, and Maize, are called the defendants.

| 2.  What is this lawsuit about? |
|---|

The lawsuit claims that beginning at least as early as 1988 and continuing at least until June 30, 1995, defendants engaged in an unlawful conspiracy to fix, raise, maintain and stabilize the prices of high fructose corn syrup in the United States in violation of Section 1 of the Sherman Act, Title 15 U.S.C. § 1.

Plaintiffs claim that as a result of the alleged conspiracy, they and other members of the Class described below have paid more for high fructose corn syrup than they would have absent the alleged conspiracy.  For the purpose of this action, plaintiffs define "high fructose corn syrup" to mean a sweetener derived from corn containing 42% or 55% fructose.

Defendants deny that they engaged in a conspiracy to fix the price of HFCS or that they violated the antitrust laws in any other way.

| 3.  Why is this a class action? |
|---|

In a class action, one or more people called Class Representatives sue on behalf of people who have similar claims.  All these people are a Class or Class Members.  One court resolves the issues for all Class Members.  Judge Michael M. Mihm, who is located in Peoria, Illinois, is in charge of this class action.

| 4.  Why is there a settlement? |
|---|

The Court did not decide in favor of plaintiffs or defendants.  Instead, the plaintiffs and Staley agreed to a settlement.  That way, they avoid the cost of a trial, the risks associated with their participation in the case, and the people affected will get compensation.  The plaintiffs and their attorneys think the settlement is in the best interest of all Class Members.

## WHO IS IN THE SETTLEMENT

To see if you will get money from this settlement, you first have to decide if you are a Class Member.

> 5. How do I know if I am part of the settlement?

On May 9, 1996, Judge Mihm decided that everyone who fits this description is a Class Member:

> all purchasers in the United States who purchased high fructose corn syrup directly from any defendant or any subsidiary or affiliate of any defendant at any time during the period from July 21, 1991, to and including June 30, 1995.

A direct purchase is one made from one of the defendants and not from anyone else, for example, a distributor.

> 6. Are there exceptions to being included?

You are not a Class Member if you are a defendant, a defendant*'s parent, subsidiary or affiliate. Governmental entities are also excluded.

Purchases that are not from a defendant, or that were not made in the United States, are not included in this settlement.

In July 1996, a notice was mailed to Class Members and was published in the national edition of *The Wall Street Journal* and in *USA Today* advising that the Court had certified a class and that eligible persons had the right to exclude themselves. If you previously elected to exclude yourself from the Class, you are not a member of the Class.

## THE SETTLEMENT BENEFITS

> 7. What does the settlement provide?

Subject to the terms and conditions of the Settlement Agreement with Staley, Staley has paid the principal sum of one hundred million dollars ($100,000,000), which has been deposited in escrow accounts and is earning interest on behalf of the Class.

The Settlement Agreement provides that Staley will be dismissed with prejudice, and released from any liability to members of the Class for claims relating to the purchase of high fructose corn syrup under federal or state antitrust or unfair competition or similar laws or regulations which are based, in whole or in part, on the facts, occurrences or other matters alleged in this litigation.

This notice is only a summary of the terms of the proposed settlement. The full agreement is set forth in the Settlement Agreement with Staley dated July 27, 2004, which has been filed with the Court. The Settlement Agreement contains other important provisions, and you are referred to the Settlement Agreement on file with the Court for the complete terms of the settlement.

| 8. What does the Plan of Distribution provide? |
|---|

The following is a proposed Plan of Distribution to distribute the net settlement funds paid by all defendants. The "net settlement funds" equal the total funds paid in settlement by all defendants ($531,000,000) plus all interest earned while those funds were in escrow accounts, and then minus all expenses paid from the settlement funds, and further minus the amount of attorneys' fees awarded by the Court and minus the reimbursement of all expenses advanced by plaintiffs' counsel and approved by the Court.

The **Plan of Distribution** is: After all claims are received from class members and reviewed by Class Counsel and/or the Claims Administrator, and all issues concerning those claims have been resolved, each class member's share of the distribution of the net settlement funds will be based upon the percentage that its total direct purchases of high fructose corn syrup is to the total direct purchases of high fructose corn syrup as set forth in the claims of all class members who file valid claims. In the case of purchases pursuant to toll arrangements, direct purchases include corn costs plus processing fee plus freight less all applicable co-product credits. Thus, if the class member directly purchased $5 of HFCS from defendants and the total dollar value of the valid claims filed by all class members is $1,000, the class member will receive 0.5% of the net settlement funds. The period for which direct purchases will be tallied is July 1, 1991, through June 30, 1995, and will include direct purchases of HFCS 42 and HFCS 55 only.

**IF YOU DO NOTHING**

| 9. What happens if I do nothing at all? |
|---|

There is no need to do anything now, unless you want to comment on or object to the settlement and the Plan of Distribution. The Court has ordered that a portion of the settlement funds be released to pay for notice.

If the settlements with ADM and Staley are given final approval by the Court, the adversarial portion of this litigation will be terminated and the process of distributing the net settlement funds to class members will occur. You will shortly be sent a further notice that will describe in more detail what you must do in order to participate in the distribution of the settlements in this case. If you participate in the settlements, your share of the distribution will be based on your total direct purchases from all defendants, regardless of what each defendant paid in settlement.

## THE LAWYERS REPRESENTING YOU AND THE PETITION FOR
## AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

| 10.  Do I have a lawyer in this case? |
|---|

The Court ordered that the law firms of Kaplan Fox & Kilsheimer LLP, in New York, New York; Berger & Montague, P.C. in Philadelphia, Pennsylvania; and Much Shelist Freed Denenberg Ament & Rubinstein, P.C. in Chicago, Illinois will represent you and other Class Members. These lawyers are called Co-Lead Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

| 11.  How will the lawyers be paid? |
|---|

To date, in the more than nine years that this litigation has been pending, plaintiffs*counsel have not received any payment for their services in conducting this litigation on behalf of plaintiffs and the Class Members or for the monies they have advanced to pay for litigation expenses. Attorneys' fees and reimbursement of expenses will be awarded by the Court, after a hearing before the Court, and will be paid from the settlement funds.

The law firms who have represented the class in this case intend to file a Joint Petition for an Award of Attorneys' Fees and Reimbursement of Expenses ("Joint Fee Petition") for twenty-five percent (25%) of the total settlement fund, including earned interest. The Joint Fee Petition will also include a request to be reimbursed (in an amount not to exceed $6 million), for the funds, including experts' fees, they advanced to pay for the litigation expenses since 1995, which have not previously been disbursed pursuant to Court order.

The Joint Fee Petition will be filed with the Court on or before September 14, 2004, and will be available for inspection in the office of the Clerk of the United States District Court for the Central District of Illinois.

A hearing on the Joint Fee Petition will be held at the same time as the hearing for final approval of the Staley settlement, on October 14, 2004.  The Court will determine the amount of any attorneys' fees to be paid to plaintiffs' counsel and the amount of any expenses to be reimbursed. Those amounts will be deducted from the settlement funds.

### COMMENTING ON OR OBJECTING TO THE SETTLEMENT OR PLAN OF DISTRIBUTION

If you are a Class Member, you can tell the Court what you think of the settlement or Plan of Distribution.

> 12.  How do I tell the Court what I think of the settlement and Plan of Distribution?

You can give reasons why you think the Court should or should not approve either. The Court will consider your views.  To comment, you must send a letter or file a pleading saying that you support or object to *In re High Fructose Corn Syrup Antitrust Litigation*.  Be sure to include your name, address, telephone number, your signature, and the reasons for your comments.  Mail it so that it will be received no later than October 1, 2004 to:

> John M. Waters, Clerk
> United States District Court for the Central District of Illinois – Peoria Division
> 204 U.S. Courthouse, 100 N.E. Monroe Street
> Peoria, IL  61602

### COMMENTING ON OR OBJECTING TO THE JOINT FEE PETITION

You can tell the Court what you think of the Joint Fee Petition.

> 13.  How do I tell the Court what I think of the Joint Fee Petition?

If you wish to comment on the Joint Fee Petition for an award of attorneys' fees and reimbursement of expenses advanced by plaintiffs' counsel, you must send a letter to or file a pleading with the Clerk of the Court saying that you object or do not object to any portion of the Joint Fee Petition and the reasons for your support or objection.  Be sure to include your name, address, telephone number, your signature or the signature of your attorney, and the reasons for any objections.  Mail it so that it will be received no later than October 1, 2004, to:

John M. Waters, Clerk
United States District Court for the Central District of Illinois – Peoria Division
204 U.S. Courthouse, 100 N.E. Monroe Street
Peoria, IL  61602

**THE COURT'S FAIRNESS HEARING**

The Court will hold a hearing to decide whether to approve the settlement, Plan of Distribution, and the Joint Fee Petition.  You may attend and you may ask to speak, but you don't have to.

---

14. When and where will the Court decide whether to approve the settlement, Plan of Distribution, and the Joint Fee Petition?

---

The Honorable Michael M. Mihm, United States District Judge of the Central District of Illinois, will hold a Fairness Hearing on October 14, 2004, at 10:00 a.m., at 204 U.S. Courthouse, 100 N.E. Monroe Street, Peoria, Illinois 61602.  At this hearing the Court will consider whether the settlement and the Plan of Distribution are fair, reasonable and adequate and to what extent the Joint Fee Petition should be granted.  If there are objections to the settlement, the Plan of Distribution, or the Joint Fee Petition, the Court will consider them.  Judge Mihm will listen to people who have asked (in advance, as described elsewhere in this Notice) to speak at the hearing.  After the hearing, the Court will decide whether to approve the settlement and will rule on the Joint Fee Petition.  We do not know how long these decisions will take.

---

15. Do I have to come to the hearing?

---

No.  Class Counsel will answer questions Judge Mihm may have.  But you are welcome to come at your own expense.  If you send a comment or objection, you don't have to come to Court to talk about it.  As long as you mailed your written comment or objection on time, the Court will consider it.  You may also pay your own lawyer to attend, but it is not necessary.

---

16. May I speak at the hearing?

---

You may ask the Court for permission to speak at the Fairness Hearing.  To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *In re High Fructose Corn Syrup Antitrust Litigation*."  Be sure to include your name, address, telephone number, and your signature.  Your Notice of Intention to Appear must be postmarked no later than October 1,

2004, and be sent to the Clerk of the Court at the address in question 12.  You cannot speak at the hearing if you previously excluded yourself from the Class.

17.  Are there more details about the settlement?

This notice summarizes the proposed settlement.  More details are in a Settlement Agreement filed with the Court on July 27, 2004, and in papers in support of the settlement which shall be filed by September 14, 2004.  You can get a copy of the Settlement Agreement and the papers in support of the settlement by writing to one of the following:

| | | |
|---|---|---|
| Robert N. Kaplan | H. Laddie Montague, Jr. | Michael J. Freed |
| Gregory K. Arenson | Charles P. Goodwin | Barat S. McClain |
| Kaplan Fox & Kilsheimer LLP | Berger & Montague, P.C. | Much Shelist Freed Denenberg |
| 805 Third Avenue, 22nd Floor | 1622 Locust Street | Ament & Rubinstein, P.C. |
| New York, NY 10022 | Philadelphia, PA, 19103 | 191 N. Wacker Drive |
| (212) 687-1980 | (215) 875-3000 | Suite 1800 |
| | | Chicago, IL 60606-1615 |
| | | (312) 521-2000 |

18. How do I get more information?

You can call one of:

Robert N. Kaplan or Gregory K. Arenson at (212) 687-1980

H. Laddie Montague, Jr. or Charles P. Goodwin at (215) 875-3000

Michael J. Freed or Barat S. McClain at (312) 521-2000

**PLEASE DO NOT TELEPHONE OR ADDRESS ANY INQUIRIES TO THE COURT.**

Dated: July 28, 2004                                         BY ORDER OF THE COURT:
                                                            John M. Waters, Clerk
                                                            United States District Court
                                                            for the Central District of Illinois
                                                            Peoria, Illinois